| | |
|---|---|
| 1 | **KAZEROUNI LAW GROUP, APC** |
| 2 | Abbas Kazerounian (SBN: 249203)<br>ak@kazlg.com |
| 3 | 245 Fischer Avenue, Suite D1 |
| 4 | Costa Mesa, California 92626<br>Telephone:  (800) 400-6808 |
| 5 | Facsimile:  (800) 520-5523 |
| 6 | |
| 7 | **KAZEROUNI LAW GROUP, APC**<br>Jason A. Ibey (SBN: 284607) |
| 8 | jason@kazlg.com<br>321 N. Mall Drive, Suite R108 |
| 9 | St. George, Utah 84790 |
| 10 | Telephone:  (800) 400-6808<br>Facsimile:  (800) 520-5523 |
| 11 | |
| 12 | Attorneys for Plaintiff,<br>CORY ROBINSON |

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORY ROBINSON, Individually and On Behalf of All Others Similarly Situated,<br><br>               Plaintiff,<br><br>     v.<br><br>BANK OF AMERICA, N.A.,<br><br>               Defendant. | Case No. 3:21-cv-00110-AJB-RBB<br><br>**CLASS ACTION**<br><br>**FIRST AMENDED COMPLAINT FOR VIOLATIONS OF REAL ESTATE SETTLEMENT PROCEDURES ACT, 12 U.S.C. §§ 2601, *ET SEQ.*<br><br>JURY TRIAL DEMANDED** |

Cory Robinson ("Plaintiff" or "Mr. Robinson") brings this amended class action Complaint, by and through his attorneys, against Defendant Bank of America, N.A. ("Defendant" or "BANA") and alleges as follows:

## INTRODUCTION

1. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

2. While many violations are described below with specificity, this Complaint alleges violations of each statute cited in its entirety.

3. Unless otherwise indicated, the use of BANA's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of BANA.

4. Congress found "that significant reforms in the real estate settlement process are needed to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country." 12 U.S.C. § 2601(a). To address this finding, Congress passed the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.*, ("RESPA") in 1974.

5. The Consumer Financial Protection Bureau ("CFPB") is the primary regulatory agency authorized by Congress to supervise and enforce compliance of RESPA. The CFPB periodically issues and amends mortgage servicing rules under Regulation X, 12 C.F.R. § 1024, RESPA's implementing regulation. 12 U.S.C. § 2617.

6. Under RESPA and Regulation X, loan servicers, including BANA, must provide borrowers with specific account information available to them in the regular course of business upon receiving a Qualified Written Request ("QWR") or a Request

for Information ("RFI") from the borrower. 12 U.S.C. § 2605(e)(1)(A); 12 C.F.R. § 1024.36(a).

7. A servicer must respond within 30 days to a QWR for information or an RFI in one of two ways: (1) provide the requested information, or (2) conduct a "reasonable search" for the requested information and provide the borrower with a written notification explaining the basis for the servicer's determination that the requested information is "not available." 12 U.S.C. § 2605(e)(2); 12 C.F.R. § 1024.36(d)(1)(i)–(ii).

8. In its official commentary to Regulation X, the CFPB outlines what constitutes as information that is "not available." Information is "not available" if: "[(1.)] The information is not in the servicer's control or possession, or [(2.)] The information cannot be retrieved in the ordinary course of business through reasonable efforts." 12 C.F.R. § 1024, Supp. I, ¶ 36(d)(1)(ii).

9. As an example of "available" information, the CFPB provides the following in its official commentary to Regulation X:

> A borrower requests **a copy of a telephonic communication with a servicer.** The servicer's personnel have access in the ordinary course of business to **audio recording files** with organized recordings or transcripts of borrower telephone calls and can identify the communication referred to by the borrower through reasonable business efforts. **The information requested by the borrower is available to the servicer.**

12 C.F.R. § 1024, Supp. I, ¶ 36(d)(1)(ii) (emphasis added).

10. A servicer may accept electronic signatures from borrowers under The Electronic Signatures in Global and National Commerce Act, 15 U.S.C. § 7001(a)(1), which states "a signature, contract, or other record relating to such transaction may not be denied legal effect, validity, or enforceability solely because it is in electronic form."

11. BANA has refused to accept Plaintiff's electronic signature.

///

12. BANA has neglected to fulfill its duty to provide information available to it in the regular course of business to Plaintiff upon receipt of Plaintiff's QWR and RFI.

13. As alleged in greater detail below, BANA has demonstrated a "pattern or practice" of failing to adequately respond to borrowers' requests for account information, which makes BANA liable for statutory damages in an amount up to $2,000 for each failure to adequately respond. 12 U.S.C. § 2605(f).

14. Notwithstanding this glaring failure to abide by its statutory duty, and despite Plaintiff's informing BANA of its failure, BANA continues to deny Plaintiff's and other borrowers' reasonable requests for account information by requiring them to provide information not required under RESPA or Regulation X.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over this action pursuant to RESPA, 12 U.S.C. § 2614, and generally pursuant to 28 U.S.C. § 1331 because the action arises out violations of federal law.

16. This Court has personal jurisdiction over BANA because BANA conducts business in California and maintains sufficient contacts with the state and this federal district.

17. Venue is appropriate in the United States District Court for the Southern District of California pursuant to 28 U.S.C. § 1391 for the following reasons: Plaintiff resides in San Diego County, California which is within this judicial district; (ii) the conduct complained of herein occurred within this judicial district; and (iii) BANA conducted business within this judicial district at all relevant times.

## PARTIES

18. Mr. Robinson is a resident and citizen of San Diego County in the State of California.

19. Upon information and belief, Defendant is a national bank with its headquarters located in Charlotte, North Carolina.

FIRST AMENDED CLASS ACTION COMPLAINT

# FACTUAL ALLEGATIONS

20. Plaintiff incorporates by reference all the above paragraphs of this complaint as if fully stated herein.

21. BANA is the loan servicer for Plaintiff's mortgage.

22. On July 20, 2020, Mr. Robinson, through counsel, sent BANA a Notice of Error and Request for Information pursuant to the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605(e), and Regulation X, 12 C.F.R. §§ 1024.35, 1024.36.

23. The letter included Plaintiff's name, his loan account number, a request for information, and a reason for the request. More specifically, Plaintiff disputed the amount of the debt owed, and asked for several documents associated with his account, including: "A copy of any and all recordings of [Plaintiff] or any other person concerning [Plaintiff's] account."

24. On or about August 13, 2020, Plaintiff's counsel received a response to the request from BANA dated August 10, 2020.

25. In its response, BANA failed to provide any of the requested information.

26. BANA merely delayed its response and created undue burden for Plaintiff by stating: "[w]e're committed to protecting the confidentiality of our customer's information and we require written authorization from the customer before we disclose any information . . . . We're unable to respond to the request and consider this inquiry closed . . . . The customer's signature(s) must be a 'live' signature, not a digital signature."

27. Plaintiff was not required to provide written authorization under RESPA or Regulation X for his QWRs or RFIs. Plaintiff's counsel was acting as Plaintiff's agent when Plaintiff requested the information, as is expressly permitted under RESPA. *See* 12 U.S.C. § 2605(e). Nevertheless, on October 19, 2020, Plaintiff sent BANA an Authorization to Furnish & Release Information to Plaintiff's counsel, as

- 5 -
FIRST AMENDED CLASS ACTION COMPLAINT

requested by BANA in its response, and attached a second Notice of Error and Request for Information pursuant to 12 U.S.C. § 2605(e) and 12 C.F.R. §§ 1024.35, 1024.36.

28. Said written request was sent to BANA through the United States Postal Service via Priority Mail, costing approximately $7.75, which request was reasonably sent in an effort to obtain compliance by BANA with RESPA.

29. On or about November 9, 2020, Plaintiff's counsel received a response to the request from BANA dated November 5, 2020.

30. In this response, BANA again failed to provide any of the requested information.

31. BANA improperly failed to provide the information, stating: "[t]he signature must be a 'live' signature, not a digital signature."

32. On November 23, 2020, Plaintiff again sent BANA an Authorization to Furnish & Release Information to Plaintiff's counsel, as requested by BANA in its response, and attached a second Notice of Error and Request for Information pursuant to 12 U.S.C. § 2605(e) 12 C.F.R. §§ 1024.35, 1024.36.

33. This further written request was mailed to BANA through the United States Postal Service via Priority Mail, costing approximately $7.75, which further request was also reasonably sent in an effort to obtain compliance by BANA with RESPA.

34. On or about December 18, 2020, Plaintiff's counsel received a response to the request from BANA dated December 17, 2020.

35. In this response, BANA failed to provide any of the requested information.

36. BANA used the same boiler plate language to deny the request, improperly failed to provide the information, and arbitrarily and unreasonably insisted that "[t]he signature must be a 'live' signature, not a digital signature."

///

37. On January 5, 2021, Plaintiff's counsel sent a meet and confer letter to BANA, again requesting the recordings.

38. In this letter, Plaintiff's counsel explained: "we have provided a valid, signed authorization form on multiple occasions . . . . Please note, my client's request specifically asks for all recordings between you and my client. Pursuant to 12 CFR § 1024.36(d)(ii) Bank of America is required to produce all information available through reasonable business efforts . . . . Therefore, please produce the requested documentation along with all audio recordings no later than January 15, 2021."

39. On or about January 20, 2021, Plaintiff's counsel received a response to the request from BANA dated January 15, 2021.

40. In this response, BANA again failed to provide any of the requested information.

41. BANA denied Plaintiff's request for audio recordings by reiterating, among other things, that "[t]he signature must be a 'live' signature, not a digital signature."

42. As of the date of the filing of this lawsuit, Plaintiff has not received any other documents from BANA, and BANA has willfully failed to provide any of the requested documents to Plaintiff.

43. Plaintiff is informed and believes that BANA received similar requests from other customers within one year prior to the filing of this Complaint.

44. After Plaintiff requested documents and recordings, BANA delayed its response. BANA then eventually provided a response but failed to provide any of the documents or recordings requested, stating that a Plaintiff must provide a "live" signature, and then in response to a subsequent request repeated the same boiler plate language and arbitrarily and unreasonably required a "live" signature from Plaintiff.

45. BANA's refusal to provide requested information to borrowers (or their agents) who submit valid QWRs or RFIs is, upon information and belief, a matter of standard business policy for BANA.

46. Plaintiff is informed and believes and hereupon alleges that BANA has refused to produce documents and recordings for possibly hundreds if not thousands of customers that have requested them.

47. Plaintiff is informed and believes and hereupon alleges that BANA can easily produce the requested recordings through reasonable business efforts.

48. Plaintiff is informed and believe and hereupon alleges that BANA systematically denied each of its customer's requests by, among other things, requiring that they provide additional information not required under RESPA or Regulation X.

49. BANA's uniform responses, requiring a "live" signature and failing to provide any of the requested documents and recordings, shows a pattern and practice of non-compliance with RESPA.

50. Plaintiff requested the recordings at least three times, and BANA failed to produce the recordings each time, which further illustrates BANA's pattern and practice of non-compliance.

51. Plaintiff, through counsel, mailed each response to BANA's denials via U.S. Priority Mail, even though Plaintiff's initial QWR and RFI complied with RESPA's and Regulation X's requirements.

52. Neither RESPA nor Regulation X requires that borrowers provide written authorizations with "live" signatures. *See* 12 U.S.C. § 2605(e)(1)(B)(i)-(ii); 12 C.F.R. § 1024.36.

53. RESPA specifically allows the "borrower (or an agent of the borrower)" to submit a qualified written request for information relating to the borrower's loan. 12 U.S.C. § 2605(e).

54. As a direct and proximate result of BANA's conduct in response to Plaintiff's QWRs, Plaintiff suffered actual damages that include, but are not limited to, postage expenses and attorneys' fees, in an amount to be proven at trial.

///

## CLASS ACTION ALLEGATIONS

55. Plaintiff brings this action on behalf of himself individually and on behalf of all others similarly situated, pursuant to Federal Rule Civil Procedure 23(b)(1), (b)(2) and/or (b)(3).

56. The putative class ("the Class") that Plaintiff seeks to represent is composed of:

> All persons within the United States who have or have had a mortgage loan with BANA and who within three years from the filing of the Complaint in this action have requested copies of audio recordings or transcripts of phone calls between themselves and BANA pursuant to 12 U.S.C. § 2605(e)(1)(A) and 12 C.F.R. § 1024.36 and who have subsequently been denied access to those audio recordings by BANA.

57. Excluded from the Class are any of BANA's officers, directors, employees, affiliates, legal representatives, attorneys, heirs, and assigns, and any entity in which BANA has a controlling interest. Judicial officers presiding over this case, its staff, and immediate family members, are also excluded from the Class.

58. The members of the Class are so numerous that joinder of all members is impracticable. While the exact number of the Class members is unknown to Plaintiff at this time, such information can be ascertained through discovery from records maintained by BANA.

59. There is a well-defined community of interest among the members of the Class because common questions of law and fact predominate, Plaintiff's claims are typical of the members of the Class, and Plaintiff can fairly and adequately represent the interests of the Class.

60. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

///

///

    a) Whether BANA failed to accept electronic signatures by Class members as required under the Electronic Signatures in Global and National Commerce Act, 15 U.S.C. § 7001(a);

    b) Whether BANA failed to provide audio recordings of telephone calls between BANA and Class members as required under RESPA;

    c) Whether BANA failed to provide documents requested by Class members as required under RESPA;

    d) Whether BANA failed to conduct a "reasonable investigation" as required pursuant to 12 C.F.R. § 1024.36(d)(1)(i)–(ii);

    e) Whether Plaintiff and the Class are entitled to damages under 12 U.S.C. § 2605(f);

    f) Whether BANA demonstrates a "pattern or practice" of failing to respond to borrowers' QWRs and RFIs.

    g) Whether BANA's conduct violates 12 U.S.C. §§ 2601, *et seq.*; and

    h) Whether Plaintiff and the putative Class members are entitled to injunctive relief as sought herein.

61. Plaintiff's claims are typical of those of the other Class members because Plaintiff, like every other Class member, requested documents and audio recordings or transcripts of telephone calls between Plaintiff and BANA, and BANA refused to provide them.

62. Plaintiff will fairly and adequately protect the interests of the Class. Moreover, Plaintiff has no interest that is contrary to or in conflict with those of the Class he seeks to represent during the Class period.

63. In addition, Plaintiff has retained competent counsel experienced in Class action litigation to protect the interest of the Class and to prosecute this action vigorously.

64. The prosecution of separate actions by individual members of the Class and would create a risk of inconsistent or varying adjudications with respect to

individual members of the Class and lead to repetitious trials of the numerous common questions of fact and law throughout the United States. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a Class action. As a result, a Class action is superior to other available methods for the fair and efficient adjudication of this controversy.

65. Proper and sufficient notice of this action may be provided to the Class members through direct mail and email.

66. Moreover, the Class members' individual damages are insufficient to justify the cost of litigation, so that in the absence of Class treatment, BANA's violations of law inflicting substantial damages in the aggregate would not be remedied without certification of the Class.

67. Absent certification of this action as a Class action, Plaintiff and the members of the Class will continue to be harmed by BANA.

## CAUSE OF ACTION

**Violations of Real Estate Settlement Procedures Act**

**12 U.S.C. §§ 2601,** *et seq.*

68. Plaintiff re-alleges and incorporates by reference all of the above paragraphs of this First Amended Complaint as though fully stated herein.

69. Plaintiff's loans with BANA were at all times relevant a "federally related mortgage loan" as defined by 12 U.S.C. § 2602(1).

70. BANA is, and was at all times relevant, a loan "servicer" as defined by 12 C.F.R. § 1024.3.

71. Plaintiff and BANA are "persons" as defined by 12 U.S.C. § 2602(5).

72. A failure to follow regulations promulgated by the CFPB in Regulation X is *per se* a violation of RESPA. 12 U.S.C. § 2605(k).

73. Plaintiff's request for audio recordings was both a QWR pursuant to 12 U.S.C. § 2605(e)(1)(A) and an RFI pursuant 12 C.F.R. § 1024.36.

///

74. Audio recordings and transcripts of phone calls with borrowers are information "available in the regular course of business" to BANA. *See* 12 C.F.R. § 1024, Supp. I, ¶ 36(d)(1)(ii).

75. BANA failed to provide Plaintiff with requested information available to BANA in the ordinary course of business. Consequently, BANA violated 12 U.S.C. § 2605(e), 12 U.S.C. § 2605(k), and 12 C.F.R. § 1024.36.

76. BANA further violated 12 U.S.C. § 2605(e), 12 U.S.C. § 2605(k), and 12 C.F.R. § 1024.36 by failing to adequately investigate and respond to Plaintiff's requests.

77. As a result of BANA's failure to comply with RESPA and Regulation X, Plaintiff incurred expenses to respond to BANA's several letters requiring that Plaintiff provide additional information.

78. Plaintiff is informed and believes that other similarly situated borrowers have requested audio recordings or transcripts of telephone calls between themselves and BANA only to be likewise denied access to that information by BANA. Additionally, BANA has refused to provide the requested information to Plaintiff despite his various requests. This is sufficient to demonstrate a "pattern or practice" under RESPA. As such, BANA is liable for statutory damages in an amount of up to $2,000 per violation pursuant to 12 U.S.C. § 2605(f).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court grants Plaintiff the following relief against BANA:

- That the Court certify this case as a class action;
- That the Court appoint Plaintiff to serve as the class representative in this matter and appoint Plaintiff's counsel as class counsel;
- That BANA's wrongful conduct alleged herein be adjudged and decreed to violate the statutes and laws asserted herein; and

///

- That Plaintiff and the Class be awarded injunctive relief prohibiting such conduct in the future.

### Violations of Real Estate Settlement Procedures Act
### 12 U.S.C. §§ 2601, *et seq.*

- Injunctive relief prohibiting such conduct in the future;
- Injunctive relief ordering BANA to release audio recordings and transcripts of telephone calls to Plaintiff and the Class members;
- Statutory damages in an amount of $2,000 per violation to Plaintiff and to each member of the Class pursuant to 12 U.S.C. § 2605(f);
- An award of actual damages according to proof per violation to Plaintiff and to each member of the Class pursuant to 12 U.S.C. § 2605(f);
- Attorneys' fees and costs; and
- Any and all further relief that this Court deems just and proper.

### TRIAL BY JURY

79. Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and hereby demands, a trial by jury on all causes of action and claims with respect to which they have a right to a jury trial.

Dated: March 22, 2021

**KAZEROUNI LAW GROUP, APC**

By /s/ Abbas Kazerounian
Abbas Kazerounian
ak@kazlg.com

**KAZEROUNI LAW GROUP, APC**
Alan Gudino (SBN: 326738)
alan@kazlg.com
2221 Camino Del Rio South, Suite 101
San Diego, California 92108
Telephone:  (619) 233-7770
Facsimile:   (800) 520-5523

Attorneys for Plaintiff, CORY ROBINSON