1  Amanda L. Groves (SBN: 187216)
   Attorney Email: agroves@winston.com
2  Shawn R. Obi (SBN: 288088)
   Attorney Email: sobi@winston.com
3  WINSTON & STRAWN LLP
   333 S. Grand Avenue
4  Los Angeles, CA 90071-1543
   Telephone: (213) 615-1700
5  Facsimile: (213) 615-1750

6  Attorneys for Defendant
   BANK OF AMERICA, N.A.
7

8              **UNITED STATES DISTRICT COURT**

9             **SOUTHERN DISTRICT OF CALIFORNIA**

10

11 | CORY ROBINSON, individually and on behalf of all others similarly situated, | **Case No. 3:21-cv-00110-AJB-RBB** |
|---|---|
| | Assigned to Hon. Anthony J. Battaglia |
| Plaintiff, | **DEFENDANT BANK OF AMERICA, N.A.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |
| v. | |
| BANK OF AMERICA, N.A., | |
| Defendant. | Date:  June 24, 2021<br>Time:  2:00 PM<br>Courtroom:  4A |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................1

II. BACKGROUND ...................................................................................................2

III. STANDARD OF REVIEW ...................................................................................5

IV. PLAINTIFF FAILS TO STATE A CLAIM FOR VIOLATION OF RESPA .......6

    A. BANA Did Not Violate RESPA By Requiring Written Authorization or Refusing to Accept Plaintiff's Electronic Signature ...................................6

    B. Even If Plaintiff Had Submitted a Live Signature, None of Plaintiff's Letters Constituted a Valid QWR Under RESPA ........................................8

    C. Plaintiff Fails to Adequately Allege Actual or Statutory Damages...........10

V. CONCLUSION ....................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allen v. United Fin. Mortg. Corp.*,
  2010 WL 1135787 (N.D. Cal. Mar. 22, 2010) ...................................................... 11

*Arvizu v. GMAC Mortg., LLC*,
  2011 WL 1087157 (E.D. Cal. Mar. 23, 2011) ...................................................... 13

*Ascon Properties, Inc. v. Mobil Oil Co.*,
  866 F.2d 1149 (9th Cir. 1989) ................................................................................ 5

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ................................................................................................ 5

*In re ATM Fee Antitrust Litig.*,
  768 F. Supp. 2d 984 (N.D. Cal. 2009) .................................................................... 3

*Bell Atl. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................................ 5

*Berneike v. CitiMortgage, Inc.*,
  708 F.3d 1141 (10th Cir. 2013) ................................................................... 8, 9, 10

*Bivens v. Bank of Am., N.A.*,
  868 F.3d 915 (11th Cir. 2017) ................................................................................ 9

*Durland v. Fieldstone Mortg. Co.*,
  2011 WL 805924 (S.D. Cal. March 1, 2011) ...................................................... 11

*Eddy v. Fed. Home Loan Mortg. Corp.* (*As Tr. for Freddie Mac
  MultiClass Certificates Series 3450*),
  2019 WL 4298043 (E.D. Cal. Sept. 11, 2019), *report and
  recommendation adopted sub nom. Eddy v. Fed. Home Loan Mortg.
  Corp.*, 2020 WL 230087 (E.D. Cal. Jan. 15, 2020) .............................................. 12

*Gilmore v. Am. Mortg. Network*,
  2012 WL 6193843 (C.D. Cal. Dec. 10, 2012) ...................................................... 13

*Givant v. Vitek Real Estate Ind. Group, Inc.*,
  2012 WL 5838934 (E.D. Cal. Nov. 15, 2012) ..................................................... 12

*Kantz v. Bank of Am., N.A.*,
  2018 WL 1948164 (M.D. Tenn. Apr. 25, 2018) ...................................................... 12

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005) ........................................................................ 3

*Lal v. Am. Home Servs., Inc.*,
  680 F. Supp. 2d 1218 (E.D. Cal. 2010) ........................................................ 11, 13

*Lemieux v. Litton Loan Servicing, LP*,
  2009 WL 5206641 (E.D. Cal. Dec. 22, 2009) ...................................................... 9

*Lemperle v. Washington Mut. Bank*,
  2010 WL 3958729 (S.D. Cal. Oct. 7, 2010) ........................................................ 3

*Loewy v. CMG Mortg., Inc.*,
  385 F. Supp. 3d 1083 (S.D. Cal. 2019) ........................................................ 8, 10

*Luciw v. Bank of Am., N.A.*,
  2010 WL 3958715 (N.D. Cal. Oct. 7, 2010) ...................................................... 12

*Medrano v. Flagstar Bank, FSB*,
  704 F.3d 661 (9th Cir. 2012) ........................................................................ 8

*Mobley v. Wilmington Tr., N.A.*,
  2016 WL 7234099 (C.D. Cal. Sept. 9, 2016) ...................................................... 9

*Orozco v. Experian Information Sols.*,
  2012 WL 6720556 (E.D. Cal. Dec. 26, 2012) .................................................... 11

*Panno v. Wells Fargo Bank, N.A.*,
  2016 WL 7495834 (C.D. Cal. Apr. 1, 2016) .................................................. 11, 12

*Pasillas v. Deutsche Bank Nat'l Tr. Co.*,
  2014 WL 1006300 (N.D. Cal. Mar. 12, 2014) ...................................................... 8

*Phillips v. Bank of Am. Corp.*,
  2011 WL 132861 (N.D. Cal. Jan. 14, 2011) ........................................................ 8

*Pike v. Bank of America, N.A.*,
  2016 WL 614013, at *6 (N.D. Ohio Feb. 16, 2016) .............................................. 7

*Progressive Advanced Ins. Co. v. Corekin*,
  2017 WL 4122821 (D. Md. Sept. 18, 2017) ........................................................ 4

iii
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
CASE NO. 3:21CV00110

*Prudential Ins. Co. of Am. v. Prusky*,
   413 F. Supp. 2d 489 (E.D. Pa. 2005) .................................................................. 4

*Robert Hueso v. Select Portfolio Servicing, Inc.*,
   2021 WL 1102452 (S.D. Cal. Mar. 23, 2021) ............................................. 11, 13

*Roth v. CitiMortgage Inc.*,
   756 F.3d 178 (2d Cir. 2014) ............................................................................ 9, 10

*Saul v. United States*,
   928 F.2d 829 (9th Cir. 1991) .............................................................................. 5

*Solan v. Everhome Mortg. Co.*,
   2011 WL 456013 (S.D. Cal. Feb. 3, 2011) ..................................................... 11

*Stoutenburg v. Bank of Am., N.A.*,
   2016 WL 6565933 (S.D. Cal. Nov. 4, 2016) .................................................. 11

*Vien-Phuong Thi Ho v. Recontrust Co.*,
   669 F. App'x 857 (9th Cir. 2016) ................................................................... 8, 9

*Wease v. Ocwen Loan Servicing, LLC*,
   915 F.3d 987 (5th Cir. 2019) ............................................................................. 9

*Zucco Partners, LLC v. Digimarc Corp.*,
   552 F.3d 981 (9th Cir. 2009) ............................................................................. 5

**Statutes**

15 U.S.C. § 7001 (Electronic Signatures in Global and National
   Commerce Act) ................................................................................... 1, 4, 6, 13

15 U.S.C. § 7001(a)(1) ............................................................................................ 4

15 U.S.C. § 7001(b)(2) ........................................................................................ 1, 4

12 U.S.C. § 2605 (Real Estate Settlement Procedures Act) ............................ *passim*

12 U.S.C. § 2605(e) ............................................................................................ 7, 8

12 U.S.C. § 2605(e)(1)(A) ...................................................................................... 5

12 U.S.C. § 2605(f) .......................................................................................... 10, 12

Gramm–Leach–Bliley Act. 15 U.S.C.A. §§ 6801–02 .......................................... 7

**Other Authorities**

12 C.F.R. § 1024.36 (Regulation X)................................................................2, 5, 8, 9

59 Fed. Reg. 65,442, 65,446 (Dec. 19, 1994)................................................................9

Fed. R. Civ. P. 12(b)(6) ........................................................................5

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff Cory Robinson alleges that Bank of America, N.A. ("BANA" or the "Bank") violated the Real Estate Settlement Procedures Act ("RESPA") because it refused to accept his electronic signature as authorization to disclose his account information to a third party (Plaintiff's counsel).  In declining to provide this information, BANA cited its obligation to protect the confidentiality of its customers' information, explaining it needed Plaintiff's written authorization in the form of a "live" signature.  In his original Complaint, Plaintiff alleged that the Electronic Signatures in Global and National Commerce Act ("E-SIGN Act") required BANA to accept Plaintiff's electronic signature, and its refusal to do so thus violated RESPA.  After BANA's motion to dismiss correctly pointed out that, by its very terms, the E-SIGN Act does *not* require the Bank "to agree to use or accept electronic records or electronic signatures," Plaintiff was forced to capitulate.  15 U.S.C. § 7001(b)(2).

Although he no longer relies on the E-SIGN Act, Plaintiff's new complaint still claims that BANA violated RESPA by not accepting an electronic signature and, remarkably, that BANA should not have sought written authorization from him at all. According to Plaintiff, because RESPA itself does not expressly require a live signature or prior written authorization, BANA's requirements necessarily violated the statute. Plaintiff cites no authority for this position, and we have found none.  On the contrary, it is entirely appropriate for a bank to confirm an agent is authorized by the principal before releasing private consumer information. Nothing in RESPA (or the E-SIGN Act, for that matter) suggests Congress intended to legislate otherwise.

As before, Plaintiff's RESPA claim is still missing essential elements.  First, none of Plaintiff's letters were valid requests under RESPA ("qualified written requests" or "QWRs"), as a matter of law, because Plaintiff's counsel did not send the requests to the correct entity or address.  And, despite the benefit of amendment, Plaintiff still fails to sufficiently plead either actual or statutory damages.  Plaintiff's single claim for

violation of RESPA remains just as defective (if not more so) as before, and the Amended Complaint should be dismissed in its entirety and with prejudice.

## II.     BACKGROUND

Plaintiff filed his original Complaint on January 20, 2021, alleging the same basic theory of liability advanced here. Dkt. 1. BANA moved to dismiss the claim. Dkt. 8. Instead of opposing BANA's motion to dismiss, Plaintiff filed the Amended Complaint. Dkt. 11.

The Amended Complaint alleges that, from July 2020 to November 2020, Plaintiff, through his counsel, sent three Notice of Error and Request for Information letters to BANA's parent and bank holding company, Bank of America Corporation ("BAC"), requesting "audio recordings" and other information related to Plaintiff's mortgage loan account.[1] In each of these letters, Plaintiff and his lawyer stated that they were "disputing the validity of the current debt" owed on Plaintiff's loan and requested "[a] copy of any and all recordings of [Plaintiff] or any other person concerning [Plaintiff's] account." Am. Compl. ¶ 23.

The Amended Complaint acknowledges that BANA (not BAC) is the servicer under RESPA. Am. Compl. ¶ 21. And BANA has designated its address for notices of error and servicing requests pursuant to 12 C.F.R. § 1024.36(b) ("Regulation X"). Specifically, BANA advises its customers to send such requests to:

> Bank of America, N.A.
> Attn: Notice of Error & Request for Information
> P.O. Box 942019
> Simi Valley, CA 93094-2019.

The designated address for servicing inquiries is listed online, was sent to Plaintiff in important loan-servicing documents, and was communicated in all of BANA's responses to Plaintiff's letters.[2] Inexplicably, however, Plaintiff's counsel sent and

---

[1] Following the three Notice of Error and Request for Information letters, Plaintiff's counsel sent BANA a "meet and confer" letter. Am. Compl. ¶¶ 37-38.

[2] On a motion to dismiss, a court may consider documents incorporated by reference in

directed all three of his alleged QWR letters to BAC, a publicly traded holding company in Charlotte, North Carolina that does not transact with customers.[3]

Despite not having received this correspondence directly, BANA provided a written response to each of the three requests on August 10, 2020, November 5, 2020, and December 17, 2020, denying the requests for documents and audio recordings and citing its obligation to protect its customers' information. Am. Compl. ¶¶ 24-26, 29-31, 34-36. In its responses, BANA explained that it is "committed to protecting the confidentiality of [its] customer's information" and "require[s] written authorization from the customer before [it] disclose[s] any information [to third parties]." Am. Compl. ¶ 26. BANA further explained that it therefore requires that the "customer's signature(s) must be a 'live' signature, not a digital signature." *Id.* Plaintiff does not allege that he or his counsel, however, ever provided a "live" signature as written authorization to disclose his information, despite BANA's repeated statements that it could only accept a "live" signature. Am. Compl. ¶¶ 26, 31, 36. Thus, BANA responded each time that it was "unable to respond to the request" and "consider[ed] th[e] inquiry closed." Am. Compl. ¶ 26.

---

the complaint without converting the motion into a motion for summary judgment. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). Plaintiff's letters and BANA's responses are therefore properly before this Court, as they are incorporated by reference into the Complaint. *See* Am. Compl. ¶¶ 22-41. This correspondence is attached as Ex. 1 to the Request for Judicial Notice ("RJN") filed concurrently with this Motion. Plaintiff's "New Loan Payment Form," attached as Ex. 2 to the RJN, is also incorporated by reference, as the entire Amended Complaint arises from his inquiries regarding payment and remaining debt on his mortgage loan with BANA. "The rationale of the 'incorporation by reference' doctrine applies with equal force to internet pages as it does to printed material," *Knievel*, 393 F.3d at 1076. Thus, the Court can also take judicial notice of BANA's public webpage dedicated to "Notices of Error & Requests for Information," attached as Ex. 3 to the RJN, which prominently displays the correct QWR Simi Valley address.

*See* https://homeloanhelp.bankofamerica.com/en/frequently-asked-questions.html.

[3] Courts recognize BAC's corporate status as a holding company. *See, e.g.*, *In re ATM Fee Antitrust Litig.*, 768 F. Supp. 2d 984, 999 (N.D. Cal. 2009). Defendant seeks judicial notice of BAC's status as a bank holding company on the ground that it is a matter of public record, as reflected in its public filings. *See Lemperle v. Washington Mut. Bank*, 2010 WL 3958729, at *3 (S.D. Cal. Oct. 7, 2010) (government reports and publications, including items from the FDIC website, are judicially noticeable); RJN, Exs. 4–5.

Plaintiff now agrees that BANA was not required to accept electronic signatures from its borrowers under the E-SIGN Act. Am. Compl. ¶ 10. He downgraded the mandatory language from his original Complaint ("[a] servicer *must* accept electronic signatures from borrowers under [the E-SIGN Act]") to permissive language in the Amended Complaint ("[a] servicer *may* accept electronic signatures from borrowers under [the E-SIGN Act]"), citing 15 U.S.C. § 7001(a)(1) in response to BANA's motion to dismiss, which correctly pointed out that Plaintiff's read of the statute was wrong. *Compare* Compl. ¶ 10 *with* Am. Compl. ¶ 10 (emphases added). This is because the E-SIGN Act's very terms confirm that it does not "require any person to agree to use or accept electronic records or electronic signatures, other than a governmental agency with respect to a record other than a contract to which it is a party." 15 U.S.C. § 7001(b)(2).[4]

Nevertheless, Plaintiff still asserts that BANA's refusal to accept his electronic signature under the E-SIGN Act is wrongful, since the Bank is "requiring that [its customers] provide additional information not required under RESPA or Regulation X." Am. Compl. ¶¶ 48, 75-76. On this same theory, Plaintiff also claims that the Bank violated RESPA and Regulation X by requiring written authorization at all. Am. Compl. ¶ 27. Specifically, Plaintiff alleges that, because his "counsel was acting as [his] agent when [he] requested the information," which is allowed under RESPA, the Bank should not have first required any written authorization. Am. Compl. ¶ 27. According to Plaintiff, the Bank engages in this "pattern or practice" of unlawfully "refus[ing] to produce documents and recordings for possibly hundreds if not thousands of customers that have requested them." Am. Compl. ¶ 49.

---

[4] Courts interpreting the statute likewise hold—consistent with its plain language—that "the use or acceptance of electronic signatures is not mandatory," noting the purpose of the E-SIGN Act is "to protect transactions from legal challenges that are solely based on the electronic form of the agreement." *Prudential Ins. Co. of Am. v. Prusky*, 413 F. Supp. 2d 489, 494 (E.D. Pa. 2005); *see also Progressive Advanced Ins. Co. v. Corekin*, 2017 WL 4122821, at *8 (D. Md. Sept. 18, 2017) ("Under Section 7001, electronic agreements are legally enforceable, but no person can be required 'to use or accept electronic records or electronic signatures.' § 7001(b)(2).").

Resting on these allegations, Plaintiff asserts a single RESPA claim on behalf of himself and a putative nationwide class of all mortgagors who have "requested copies of audio recordings or transcripts of phone calls between themselves and BANA pursuant to 12 U.S.C. § 2605(e)(1)(A) and 12 C.F.R. § 1024.36 and who have subsequently been denied access to those audio recordings"—apparently for any reason whatsoever. Am. Compl. ¶ 56. Plaintiff claims that he suffered harm in the form of "postage expenses and attorneys' fees" he allegedly incurred in responding to BANA's letters. Am. Compl. ¶¶ 54, 77. Plaintiff also seeks statutory damages of $2,000 per violation, again for both himself and each putative class member. Finally, Plaintiff seeks injunctive relief prohibiting BANA from requiring written authorizations with "live" signatures and ordering BANA to release audio recordings and transcripts of telephone calls to Plaintiff and the putative class. Am. Compl. ¶ 78.

### III.   STANDARD OF REVIEW

Under Rule 12(b)(6), a complaint fails to state a claim unless it contains "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. v. Twombly*, 550 U.S. 544, 547 (2007). A plaintiff must allege "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Although a motion to dismiss may be granted with leave to amend, leave to amend is not required where any "amendment would be futile or where the amended complaint would be subject to dismissal." *Saul v. United States*, 928 F.2d 829, 843 (9th Cir. 1991) (internal citation omitted). "The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Ascon Properties, Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009).

## IV. PLAINTIFF FAILS TO STATE A CLAIM FOR VIOLATION OF RESPA

### A. BANA Did Not Violate RESPA By Requiring Written Authorization or Refusing to Accept Plaintiff's Electronic Signature

The crux of Plaintiff's RESPA claim is that BANA should have released his information to his counsel without requiring a live signature—and apparently without requiring any written authorization at all. Am. Compl. ¶¶ 27, 53, 49, 52. In other words, Plaintiff contends RESPA required BANA to accept a law firm's letterhead as sufficient evidence of authorization to release his confidential mortgage information under Regulation X. Plaintiff reasons simply that neither RESPA nor Regulation X require a "live" signature or written authorization when counsel is acting as Plaintiff's agent. Am. Compl. ¶¶ 27, 52. Thus, according to Plaintiff, "requiring that [customers] provide additional information not required under" those authorities necessarily violates them. Am. Compl. ¶ 48, *see also id.* ¶ 14. But BANA's common-sense policy of confirming that an agent is authorized before disclosing a borrower's documents is not prohibited or even addressed by RESPA or Regulation X. On the contrary, banks *should* require evidence beyond purported law firm letterhead before turning over private consumer information to a third party. Plaintiff's attempt to amend around his failed E-SIGN Act theory should be rejected.

While the original Complaint at least relied on some legal authority (the E-SIGN Act), the Amended Complaint's theory of wrongdoing relies on no legal support whatsoever. Instead, Plaintiff relies merely on the absence of any such requirements under RESPA or Regulation X. According to Plaintiff, "[n]either RESPA nor Regulation X requires that borrowers provide written authorizations with 'live' signatures"; therefore the Bank is in violation by requiring one on its own. The Amended Complaint also takes issue with BANA's requirement that Plaintiff provide written authorization before releasing his information. Plaintiff alleges that his "counsel was acting as Plaintiff's agent when [he] requested the information," which is allowed under RESPA and—according to Plaintiff, somehow means BANA cannot seek written

verification of that fact. Am. Compl. ¶ 27. Of course, Plaintiff cites no authority for this proposition because there is none (he cites only RESPA's general disclosure obligations under 12 U.S.C. § 2605(e)). Am. Compl. ¶¶ 27, 53. Once again, Plaintiff relies exclusively on the *absence* of any such requirement under the relevant statutory schemes. Am. Compl. ¶¶ 14, 48.

Plaintiff's efforts to convert RESPA's and Regulation X's silence into prohibitions should be rejected not only because his position is utterly unsupported by the law, but because it is also contrary to public interest and the protection of personal identifiable information. Under Plaintiff's theory of liability, a servicer violates RESPA any time it requires its own measures designed to protect consumer privacy. It is uncontroversial that mortgage servicers maintain their customers' sensitive financial information and have statutory obligations to keep that information confidential under state and federal law, including the Gramm–Leach–Bliley Act. 15 U.S.C.A. §§ 6801–02. Valid written authorizations to release that information are of course an important component in safeguarding that information. In *Pike v. Bank of America, N.A.*, for instance, the plaintiff and his attorneys sent two purported QWRs to BANA, but the Bank "could not provide a substantive response to either [QWR], based on the fact that the signatures it had on file … did not match." 2016 WL 614013, at *6 (N.D. Ohio Feb. 16, 2016). "BANA offered the [plaintiffs] and their attorneys several options by which they could authorize Counsel to receive information regarding their Account." *Id.* But there, as here, "[n]either [plaintiffs] nor their Counsel responded to either of these letters to provide the requested authorization." *Id.* The court thus held that "the QWRs from the [plaintiffs] to BANA cannot serve as the basis for their claims." *Id.* Here, Plaintiff's theory is not only contrary to *Pike*, it would render it legally impossible for the Bank to request information required to match signatures in the first place. RESPA does not support, let alone require, this result.

Plaintiff's argument that BANA violated RESPA because "[n]either [it] nor Regulation X requires that borrowers provide written authorizations with 'live'

7
MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
CASE NO. 3:21CV00110

signatures" is meritless, and the Amended Complaint should be dismissed with prejudice.

### B. Even If Plaintiff Had Submitted a Live Signature, None of Plaintiff's Letters Constituted a Valid QWR Under RESPA

Under RESPA, "the statutory duty to respond does not arise with respect to all inquiries or complaints from borrowers to servicers." *Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 666 (9th Cir. 2012). Instead, a servicer's obligation to respond to a QWR is not "triggered unless the QWR is sent to the address the servicer has designated for receipt and handling of QWRs." *Loewy v. CMG Mortg., Inc.*, 385 F. Supp. 3d 1083, 1086-87 (S.D. Cal. 2019); *Vien-Phuong Thi Ho v. Recontrust Co.*, 669 F. App'x 857, 858 (9th Cir. 2016) (loan servicers are "only required to respond to requests mailed to that specific address"); 12 C.F.R. § 1024.36(b). Indeed, § 2605(e) of RESPA, by its terms, imposes a duty only upon a "loan servicer" to respond to QWRs. *See Pasillas v. Deutsche Bank Nat'l Tr. Co.*, 2014 WL 1006300, at *5 (N.D. Cal. Mar. 12, 2014) ("As a preliminary matter, the Court notes that Section 2605(e) imposes duties on loan servicers only."); *Phillips v. Bank of Am. Corp.*, 2011 WL 132861, at *3 (N.D. Cal. Jan. 14, 2011) (same). "Communication failing to meet the requirements of RESPA and its implementing regulation amounts to nothing more than general correspondence between a borrower and servicer." *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1149 (10th Cir. 2013). Here, Plaintiff directed his letters both to the wrong entity and to the wrong address. Both are nonwaivable defects that preclude Plaintiff's RESPA claim—even if Plaintiff were right about the authorization and electronic signature.

Specifically, Plaintiff sent the inquiries to BAC, an entity that did not service Plaintiff's loan. Plaintiff also failed to send his requests to BANA's Simi Valley address, which is the address BANA clearly designated for receipt and handling of QWRs. *See*, *supra* n.2. Instead, the letters were sent to BAC at its address in Charlotte, North Carolina. For that simple reason, BANA's RESPA disclosure duties were never triggered in the first place: the letters were not valid QWRs and did not require BANA

to disclose anything to Plaintiff under RESPA. *Id.*; *Vien-Phuong Thi Ho*, 669 F. App'x at 858.

Indeed, in its final rulemaking notice, Regulation X provides that "[i]n the event the servicer establishes such an office and complies with all the necessary notice provisions of this rule, then the borrower *must* deliver its request to that office in order for the inquiry to be a 'qualified written request.'" RESPA § 6, Transfer of Servicing of Mortgage Loans (Regulation X), 59 Fed. Reg. 65,442, 65,446 (Dec. 19, 1994) (emphasis added). Consistent with the statutory mandate, courts routinely reject RESPA claims based on non-compliant notices. *See, e.g.*, *Mobley v. Wilmington Tr., N.A.*, 2016 WL 7234099, at *3 (C.D. Cal. Sept. 9, 2016) ("Plaintiff's failure to send the [] QWR to the required address doom[ed] his claim brought pursuant to 12 C.F.R. § 1026.36."); *Lemieux v. Litton Loan Servicing, LP*, 2009 WL 5206641, at *3 (E.D. Cal. Dec. 22, 2009) (dismissing a RESPA claim in part because "[the p]laintiffs have not pled facts showing that they mailed a QWR to the address designated by [the defendant] for the purpose of receiving QWRs"); *Wease v. Ocwen Loan Servicing, LLC*, 915 F.3d 987, 995 (5th Cir. 2019) ("Ignoring an exclusive QWR address carries harsh consequences."); *Bivens v. Bank of Am., N.A.*, 868 F.3d 915, 921 (11th Cir. 2017) ("Because [the borrower] failed to address his QWR to [the servicer]'s designated address for QWR receipt, [the servicer] had no duty to respond to it.").

That BANA ultimately responded to Plaintiff makes no difference. The Circuits that have squarely confronted this question have unequivocally held that inquiries sent to an address other than the designated address do *not* trigger RESPA duties, even if the loan servicer responds. *See Roth v. CitiMortgage Inc.*, 756 F.3d 178, 182 (2d Cir. 2014); *Wease*, 915 F.3d at 995; *Berneike*, 708 F.3d at 1149. In *Berneike*, the Tenth Circuit expressly considered and rejected the argument that the defendant "waived its statutory right to receive all future QWRs at its specified address because it responded without asserting [the plaintiff's] correspondence was sent to the wrong address." 708 F.3d at

1149; *see also Roth*, 756 F.3d at 182 (same).  Thus, any argument that BANA waived this defense by responding fails.

While the Ninth Circuit has not expressly considered the question, the Southern District of California has.  It likewise held that "a servicer's obligation to respond to a QWR isn't triggered unless the QWR is sent to the address the servicer has designated for receipt and handling of QWRs." *Loewy*, 385 F. Supp. 3d at 1086 (citing *Berneike*, 708 F.3d at 1149 ("Failure to send the QWR to the designated address … does not trigger the servicer's duties under RESPA.") and *Roth*, 756 F.3d at 182 ("[A] letter sent to a different address is not a QWR, even if an employee at that address (who may not have training in RESPA compliance) in fact responds to that letter.")).  In *Loewy*, the court followed the Second and Tenth Circuit's reasoning, as well as the plain language of Regulation X, concluding that because it was "undisputed that the [plaintiffs] did not send the original email to [the defendant's] designated QWR address," the defendant was under "no legal obligation to respond to that request, even if it ultimately did so." 385 F. Supp. 3d at 1087.  The same is true here, and Plaintiff's RESPA claim fails as a matter of law.

### C. Plaintiff Fails to Adequately Allege Actual or Statutory Damages

Plaintiff's claim fails on the additional ground that he does not adequately allege that he suffered damages as a result of BANA's refusal to provide the requested information, as required under RESPA.

Section 2605(f) of RESPA provides that if a servicer does not comply with its RESPA obligations, the requester shall be entitled to "any actual damages to the borrower as a result of the failure" and statutory damages for "any additional damages … in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000." 12 U.S.C. § 2605(f).  In the class-action context, a plaintiff bringing a RESPA claim must sufficiently allege "any actual damages to each of the borrowers in the class as a result of the failure" and "any

additional [statutory] damages, as the court may allow, in the case of a pattern or practice of noncompliance" with the statute. *Id.*

In addition, the "loss alleged must be related to the RESPA violation itself." *Lal v. Am. Home Servs., Inc.*, 680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010). The requirement "that plaintiffs plead pecuniary damage is not a mere pleading formality; it is a requirement that has the effect of limiting the cause of action to circumstances in which plaintiffs can show that [ ] [the alleged violation] has caused them actual harm." *Panno v. Wells Fargo Bank, N.A.*, 2016 WL 7495834, at *8 (C.D. Cal. Apr. 1, 2016) (citing *Allen v. United Fin. Mortg. Corp.*, 2010 WL 1135787, at *5 (N.D. Cal. Mar. 22, 2010)).

The original Complaint failed to allege that Plaintiff, or any other member of the purported class, was damaged at all. *See generally* Dkt. 1. This time, Plaintiff alleges he suffered actual damages in the form of "postage expenses and attorneys' fees." Am. Compl. ¶ 54; *see also id.* ¶ 77 ("Plaintiff incurred expenses to respond to BANA's several letters requiring that Plaintiff provide additional information."). Neither of these "incurred expenses" saves Plaintiff's claim.

First, "attorney's fees and costs incurred by Plaintiffs do not qualify as actual damages for RESPA purposes." *Orozco v. Experian Information Sols.*, 2012 WL 6720556, at *4 (E.D. Cal. Dec. 26, 2012) (dismissing claim on the ground that failure to plead pecuniary damages caused by an alleged RESPA violation was "fatal"). Put differently, "simply having to file suit" does not suffice as a harm warranting actual damages. *Lal*, 680 F. Supp. 2d at 1223. "If such were the case, every RESPA suit would inherently have a claim for damages built in." *Id*. Courts have consistently dismissed RESPA claims on this basis. *See, e.g.*, *Robert Hueso v. Select Portfolio Servicing, Inc.*, 2021 WL 1102452, at *8 (S.D. Cal. Mar. 23, 2021) (collecting cases and explaining that "in the RESPA context, a request for attorneys' fees for the lawsuit raising the RESPA claim does not suffice to state damages"); *Durland v. Fieldstone Mortg. Co.*, 2011 WL 805924, at *4 (S.D. Cal. March 1, 2011) ("allegation that [the plaintiff] incurred legal costs" is insufficient to plead actual damages under RESPA); *Stoutenburg v. Bank of*

*Am., N.A.*, 2016 WL 6565933, at *4 (S.D. Cal. Nov. 4, 2016) (same); *Solan v. Everhome Mortg. Co.*, 2011 WL 456013, at *3 (S.D. Cal. Feb. 3, 2011) (same); *Luciw v. Bank of Am., N.A.*, 2010 WL 3958715, at *5 (N.D. Cal. Oct. 7, 2010) (same). This Court should do the same.

Plaintiff's conclusion that he suffered damages in the form of postage fees is similarly defective, as courts readily dismiss RESPA claims on this basis as well. For instance, in *Eddy*, the court rejected the plaintiff's alleged damages of "photocopying costs and postage costs incurred as a result of having to send additional correspondences due to [the bank's] failure to adequately respond to Plaintiffs' requests" because the plaintiff did "not specify how these additional costs were incurred as a result of BofA's alleged RESPA violation." *Eddy v. Fed. Home Loan Mortg. Corp.* (*As Tr. for Freddie Mac MultiClass Certificates Series 3450*), 2019 WL 4298043, at *5 (E.D. Cal. Sept. 11, 2019), *report and recommendation adopted sub nom. Eddy v. Fed. Home Loan Mortg. Corp.*, 2020 WL 230087 (E.D. Cal. Jan. 15, 2020). Similarly, in *Kantz*, the court observed that that the cost of preparing "qualified written requests" *alone* would not be a sufficient allegation of damages to survive a motion to dismiss, as it would render the causal connection requirement of the statute superfluous. *Kantz v. Bank of Am., N.A.*, 2018 WL 1948164, at *6 (M.D. Tenn. Apr. 25, 2018). Other courts have held the same. *See, e.g.*, *Givant v. Vitek Real Estate Ind. Group, Inc.*, 2012 WL 5838934, at *4–5 (E.D. Cal. Nov. 15, 2012) (conclusory allegation that the defendant's failure to respond to a QWR resulted in postage expenses was insufficient to establish actual damages under RESPA); *Panno*, 2016 WL 7495834, at *8 (same). Plaintiff's theory that he suffered actual damages by paying postage fees should likewise be rejected.

The claim for statutory damages fares no better. For statutory damages under 12 U.S.C. § 2605(f), Plaintiff must plead "a pattern or practice of noncompliance with the requirements of this section," but he fails to do so for himself or other members of the purported class. Despite having a second chance, Plaintiff makes the same conclusory allegations on "inform[ation] and belie[f]" that BANA engaged in any such "pattern or

practice" of noncompliance. Am. Compl. ¶ 78. Once again, he provides no facts to support that any putative class member even sent in a legitimate QWR, let alone that any were denied, or denied on the same basis as Plaintiff's requests. On the contrary, he claims that any consumer who sent a QWR (valid or invalid) and had it denied for any reason (valid or invalid) is entitled to damages. Am. Compl. ¶¶ 41-45. These threadbare allegations do not demonstrate entitlement to statutory damages under RESPA. *See, e.g.*, *Arvizu v. GMAC Mortg., LLC*, 2011 WL 1087157, at *3 (E.D. Cal. Mar. 23, 2011) ("Plaintiff's conclusory statement 'on information and belief' that Defendants engage in a pattern and practice of RESPA violations is insufficient to satisfy federal pleading standards."); *Gilmore v. Am. Mortg. Network*, 2012 WL 6193843, at *6 (C.D. Cal. Dec. 10, 2012) ("Plaintiff cannot allege a pattern or practice of RESPA violations on 'information and belief' when he pleads no facts to support such an allegation."); *Robert Hueso*, 2021 WL 1102452, at *8 (complaint failed to allege entitlement to statutory damages where the plaintiff alleged that a defendant "engaged in a pattern or practice of violating RESPA but provide[d] no factual support for this claim"); *Lal*, 680 F. Supp. 2d at 1223 (dismissing conclusory pattern or practice claim because it was "a legal conclusion couched as a factual allegation").

Despite his second bite at the apple, Plaintiff has failed to plead sufficient facts establishing actual or statutory damages. His RESPA claim should be dismissed with prejudice.

## V. CONCLUSION

Plaintiff's Amended Complaint fails to cure any of the deficiencies in his original Complaint and, in certain respects, is even more deficient. Without his erroneous read of the E-SIGN Act to prop up his claims, the Amended Complaint exposes the utter lack of legal support for his theory of liability. Equally problematic, none of Plaintiff's requests even constituted valid QWRs to begin with, and he still fails to adequately allege that he or any putative class member suffered any cognizable harm from BANA's alleged conduct. For all of these reasons, Plaintiff's Amended Complaint should be

dismissed with prejudice.

Dated: April 6, 2021

Respectfully submitted,

WINSTON & STRAWN LLP

By: */s/ Amanda L. Groves*
Amanda L. Groves (SBN: 187216)
Shawn R. Obi (SBN: 288088)

*Attorneys for Defendant*
BANK OF AMERICA, N.A.