1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

11
12
13
14
15
16
17

CORY ROBINSON, individually and on behalf of others similarly situated,

Plaintiff,

v.

BANK OF AMERICA, N.A.,

Defendant.

Case No.:  21-cv-00110-AJB-DEB

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

**(Doc. No. 12)**

18   Before the Court is Defendant Bank of America, N.A.'s ("Defendant" or "BANA")
19 motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 12-1.)
20 Concurrently with the motion to dismiss, Defendant filed a request for judicial notice of
21 five exhibits. (Doc. No. 12-2.) The motion has been fully briefed. (Doc. Nos. 15 & 16.)
22 Pursuant to Civil Local Rule 7.1.d.1, the Court finds the instant matter suitable for
23 determination on the papers and without oral argument. For the reasons set forth below,
24 the Court **GRANTS** Defendant's motion to dismiss and **GRANTS IN PART AND**
25 **DENIES IN PART** Defendant's request to take judicial notice.
26 ///
27 ///
28 ///

1

21-cv-00110-AJB-DEB

## I.     BACKGROUND[1]

Defendant Bank of America, N.A., is a national bank headquartered in Charlotte, North Carolina, and is the loan servicer for Plaintiff's mortgage. (First Amended Complaint ("FAC"), Doc. No. 11, ¶¶ 19, 21.) On July 20, 2020, Plaintiff, through counsel, sent Defendant a Notice of Error and Request for Information pursuant to the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e), and Regulation X, 12 C.F.R. §§ 1024.35, 1024.36. (*Id.* ¶ 22.) The letter included Plaintiff's name, his loan account number, a request for information, and a reason for the request. (*Id.* ¶ 23.) In the letter, Plaintiff disputed the amount of debt owed and asked for several documents associated with his account, including "[a] copy of any and all recordings of [Plaintiff] or any other person concerning [Plaintiff's] account." (*Id.*) In August 2020, Plaintiff's counsel received Defendant's response to the request. (*Id.* ¶ 24.) However, Defendant's response failed to provide any of the requested information. (*Id.* ¶ 25.) Rather, Defendant stated: "[w]e're committed to protecting the confidentiality of our customer's information and we require written authorization from the customer before we disclose any information . . . . We're unable to respond to the request and consider this inquiry closed . . . . The customer's signature(s) must be a 'live' signature, not a digital signature." (*Id.* ¶ 26.)

Plaintiff asserts he was not required to provide written authorization under RESPA or Regulation X for his QWRs or RFIs. (*Id.* ¶ 27.) Plaintiff's counsel, acting as Plaintiff's agent when he requested the information, is expressly permitted to do so under RESPA, 12 U.S.C. § 2605(e). (*Id.*) Still, on October 19, 2020, Plaintiff sent Defendant an Authorization to Furnish & Release Information to Plaintiff's counsel, as requested by Defendant in its response, and attached a Notice of Error and Request for Information pursuant to 12 U.S.C. § 2605(e) and Regulation X. (*Id.*) In early November of 2020, Plaintiff's counsel received Defendant's response, again failing to provide any of the requested information, stating:

---

[1] The following facts are taken from Plaintiff's FAC, which the Court construes as true for the limited purpose of resolving the instant motion. *See Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1247 (9th Cir. 2013).

21-cv-00110-AJB-DEB

1    "[t]he signature must be a 'live' signature, not a digital signature." (*Id.* ¶¶ 29–31.)

2    On November 23, 2020, Plaintiff again sent Defendant an Authorization to Furnish

3    & Release Information to Plaintiff's counsel, as requested by Defendant in its response,

4    and attached a second Notice of Error and Request for Information pursuant to 12 U.S.C.

5    § 2605(e) and Regulation X. (*Id.* ¶ 32.) Several weeks later, Plaintiff's counsel received a

6    response from Defendant, again failing to provide any of the requested information and

7    using the same boilerplate language to deny the request, insisting the signature "be a 'live'

8    signature, not a digital signature." (*Id.* ¶¶ 34–36.) Finally, on January 5, 2021, Plaintiff's

9    counsel sent a meet and confer letter to Defendant explaining: "we have provided a valid,

10   signed authorization form on multiple occasions . . . . Pursuant to 12 CFR § 1024.36(d)(ii)

11   Bank of America is required to produce all information available through reasonable

12   business efforts . . . . Therefore, please produce the requested documentation along with all

13   audio recordings no later than January 15, 2021." (*Id.* ¶¶ 37–38.) On or about January 20,

14   2021, Plaintiff's counsel received a response from Defendant, again failing to provide the

15   requested information and reiterating that "[t]he signature must be a 'live' signature, not a

16   digital signature." (*Id.* ¶¶ 39–42.) As of the time of filing this lawsuit, Plaintiff has not

17   received any other documents from Defendant. (*Id.* ¶ 42.)

18   According to Plaintiff, Defendant's refusal to provide requested information to

19   borrowers or their agents who submit valid QWRs or RFIs is Defendant's standard business

20   policy. (*Id.* ¶ 45.) Furthermore, Plaintiff believes Defendant has refused to produce

21   documents and recordings for "possibly hundreds if not thousands of customers that have

22   requested them." (*Id.* ¶ 46.) Plaintiff alleges Defendant "systematically denied each of its

23   customer's requests by, among other things, requiring that they provide additional

24   information not required under RESPA or Regulation X." (*Id.* ¶ 47.) Plaintiff further

25   alleges Defendant's "uniform responses, requiring a 'live' signature and failing to provide

26   any of the requested documents and recordings, shows a pattern and practice of

27   noncompliance with RESPA." (*Id.* ¶ 49.)

28   On January 20, 2021, Plaintiff filed the instant action in this court. (Doc. No. 1.) In

21-cv-00110-AJB-DEB

1 March 2021, Plaintiff filed the FAC, alleging one claim for violations of RESPA, 12 U.S.C.

2 § 2601, *et seq.* (*Id.* ¶¶ 66–78.) By the present motion, Defendant moves to dismiss

3 Plaintiff's FAC for failure to state a claim, pursuant to Federal Rule of Civil Procedure

4 12(b)(6). (Doc. No. 12-1 at 7–8.)

5 **II.    LEGAL STANDARD**

6      A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a plaintiff's

7 complaint. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). "[A] court may dismiss

8 a complaint as a matter of law for (1) lack of cognizable legal theory or (2) insufficient

9 facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*,

10 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). However, a complaint will survive a

11 motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on

12 its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In making this

13 determination, a court reviews the contents of the complaint, accepting all factual

14 allegations as true and drawing all reasonable inferences in favor of the nonmoving party.

15 *See Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975

16 (9th Cir. 2007). Notwithstanding this deference, the reviewing court need not accept legal

17 conclusions as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). It is also improper for

18 a court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Assoc.*

19 *Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526

20 (1983). However, "[w]hen there are well-pleaded factual allegations, a court should assume

21 their veracity and then determine whether they plausibly give rise to an entitlement to

22 relief." *Iqbal*, 556 U.S. at 664. "In sum, for a complaint to survive a motion to dismiss, the

23 non-conclusory factual content, and reasonable inferences from that content, must be

24 plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*,

25 572 F.3d 962, 969 (9th Cir. 2009) (quotations and citation omitted).

26 **III.   REQUESTS FOR JUDICIAL NOTICE**

27      While the scope of review on a motion to dismiss for failure to state a claim is limited

28 to the complaint, a court may consider evidence on which the complaint necessarily relies

1   if "(1) the complaint refers to the document; (2) the document is central to the plaintiff['s]

2   claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6)

3   motion." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) (internal

4   quotation marks and citations omitted). Furthermore, Federal Rule of Evidence 201 permits

5   judicial notice of a fact which is "not subject to reasonable dispute because it: (1) is

6   generally known within the trial court's territorial jurisdiction; or (2) can be accurately and

7   readily determined from sources whose accuracy cannot reasonably be questioned." *Welk*

8   *v. Beam Suntory Imp. Co.*, 124 F. Supp. 3d 1039, 1041–42 (S.D. Cal. 2015).

9        Additionally, courts may consider documents under the "incorporation by reference"

10  doctrine when a plaintiff "refers extensively to the document or the document forms the

11  basis of the plaintiff's claim." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002

12  (9th Cir. 2018) (quoting *United States v. Ritchie*, 342 F.3d 903, 907 (9th Cir. 2003))

13  (internal quotations omitted). Under the "incorporation by reference" doctrine, courts may

14  "take into account documents whose contents are alleged in a complaint and whose

15  authenticity no party questions, but which are not physically attached to the [plaintiff's]

16  pleading." *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012) (internal

17  quotations omitted). A court "may treat such a document as part of the complaint, and thus

18  may assume that its contents are true for purposes of a motion to dismiss under Rule

19  12(b)(6)." *Ritchie*, 342 F.3d at 908. However, the court cannot consider any documents

20  incorporated by reference in a complaint if the authenticity of those documents is contested.

21  *See Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998), *superseded by statute on other*

22  *grounds as recognized in Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681–82 (9th

23  Cir. 2006).

24       In support of its motion to dismiss, Defendant requests the Court to take judicial

25  notice of the following documents: (1) Plaintiff's July 20, 2020, October 19, 2020, and

26  November 23, 2020 letters, and Defendant's responses; (2) Plaintiff's "New Loan Payment

27  Form"; (3) BANA's webpage that displays Defendant's designated address for "Notices of

28  Error & Requests for Information"; and (4 & 5) two official records confirming the fact

1   that Bank of America Corporation ("BAC") is a holding company. (Doc. No. 12-2 at 2–4.)

2   Defendant contends all documents are appropriate subjects for consideration under judicial

3   notice or the doctrine of incorporation by reference. Plaintiff objects to Defendant's

4   requests, urging the Court not to consider Defendant's exhibits in the motion to dismiss.

5   (Doc. No. 15 at 18–21.) The Court now turns to Plaintiff's objections.

### A.  Plaintiff's Letters and Defendant's Responses

7        First, Plaintiff objects to Exhibit 1 to Defendant's motion to dismiss, Plaintiff's

8   letters and Defendant's responses (the "letters"), arguing extrinsic evidence on a Rule

9   12(b)(6) motion to dismiss is generally excluded. (Doc. No. 15 at 18.) Plaintiff argues the

10  party seeking judicial notice must clearly explain what fact or facts it wants the court to

11  judicially notice, and that here, Defendant fails to specify the fact or facts to be noticed.

12  (*Id.* at 19.) Plaintiff further argues the letters between the parties are not matters of public

13  record. (*Id.*) Finally, Plaintiff argues the Court should not consider the letters under the

14  doctrine of incorporation by reference because they are not "written instruments" under

15  Fed. R. Civ. P. 10(c). (*Id.* at 21.)

16       The Court finds the letters are inappropriate for judicial notice, as they are not

17  generally known within the Court's jurisdiction, nor can its accuracy readily be determined.

18  However, because the FAC specifically relies upon them and Plaintiff does not question

19  its authenticity, *Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012), the Court

20  may incorporate the letters by reference. (*See* FAC ¶¶ 22–26.) Accordingly, the Court

21  **GRANTS** Defendant's request under the doctrine of incorporation by reference.

### B.  Plaintiff's New Loan Payment Form

23       Next, Plaintiff objects to Exhibit 2, Plaintiff's "New Loan Payment Form," on the

24  basis that it is not a written instrument. (Doc. No. 15 at 21.) Defendant asserts that

25  Plaintiff's "New Loan Payment Form" is incorporated by reference "as the entire

26  Complaint arises from his inquiries regarding payment and the remaining debt on his

27  mortgage loan with BANA." (Doc. No. 12-2 at 2.) The Court agrees with Plaintiff that

28  Exhibit 2 should not be considered by the Court because these extrinsic documents were

1    not incorporated by reference in the FAC and are not proper subjects for judicial notice.

2    Moreover, the Court need not rely on this exhibit in reaching its conclusion below.

3    Accordingly, the Court **DENIES AS MOOT** Defendants' request for judicial notice of

4    Exhibit 2.

5         **C.    BANA's Public Webpage**

6         Plaintiff further objects to Defendant's Exhibit 3, BANA's webpage that displays its

7    designated address for "Notices of Error & Requests for Information," on the basis that the

8    webpage is not a matter of public record because BANA is not a governmental entity. (Doc.

9    No. 15 at 20.) Plaintiff asserts business websites are improper documents for judicial notice

10   because they are "generally are not the sorts of sources whose accuracy cannot reasonably

11   be questioned . . . ." (*Id.* (internal quotations omitted).) Defendant seeks to use this

12   document to establish the specified address that a borrower would have to use to submit a

13   QWR. Information on websites, especially a party's website, is often not considered an

14   appropriate subject of judicial notice. *Gerritsen v. Warner Bros. Entm't*, 112 F. Supp. 3d

15   1011, 1030–31 (C.D. Cal. 2015) (citing cases and declining to take judicial notice of the

16   defendant's website); *Spy Optic v. Alibaba*, 163 F. Supp. 3d 755, 763 (C.D. Cal.

17   2015) (finding "private corporate websites, particularly when describing their own

18   business, generally are not the sorts of sources whose accuracy cannot reasonably be

19   questioned" (internal citation and quotation marks omitted). Furthermore, the FAC does

20   not implicitly or explicitly reference the webpage that displays BANA's designated address

21   for "Notices of Error & Requests for Information." Therefore, the document was not

22   incorporated by reference in the FAC. Accordingly, to the Court **DENIES** Defendant's

23   request for judicial notice of Exhibit 3.

24        **D.    Official Records**

25        Lastly, Plaintiff objects to Exhibits 4 and 5, two official records: (1) from the Federal

26   Deposit Insurance Corporation's website, and (2) from the Federal Reserve's National

27   Information Center website, respectively. (Doc. No 12-2 at 35–50.) Specifically, Plaintiff

28   asserts the purported fact is irrelevant to Plaintiff's RESPA claim and because "judicially

21-cv-00110-AJB-DEB

1   noticing that purported fact is not a straightforward process, as BANA asks the Court to

2   look at multiple websites to extrapolate information[.]" (Doc. No. 15 at 20.) The Court

3   agrees with Defendant that Exhibits 4 and 5 may be judicially noticed. This information,

4   from two different government websites, "can be accurately and readily determined from

5   sources whose accuracy cannot reasonably be questioned" and therefore "is not subject to

6   reasonable dispute." Fed. R. Evid. 201(b); *see Romero v. Securus Techs., Inc.*, 216 F. Supp.

7   3d 1078, 1084 n.1 (S.D. Cal. 2016) (holding websites run by governmental agencies are

8   reliable Internet sources, and thus proper for judicial notice). Accordingly, the Court

9   **GRANTS** Defendant's request for judicial notice of Exhibits 4 and 5 to the motion to

10  dismiss.

11  **IV.   DISCUSSION**

12        Plaintiff asserts Defendant violated RESPA by failing to respond to Plaintiff's

13  QWRs sent on July 20, 2020, October 19, 2020, and November 23, 2020. (FAC ¶¶ 22, 27,

14  32.) Particularly, Plaintiff alleges violations of 12 C.F.R. § 1024.36 and 12 U.S.C.

15  § 2605(e) and (k). (*Id.* at ¶¶ 75–76.) Plaintiff alleges he "was not required to provide written

16  authorization under RESPA or Regulation X for his QWRs or RFIs" because "Plaintiff's

17  counsel was acting as [his] agent when [he] requested the information," and Defendant's

18  "uniform responses, requiring a live signature and failing to provide any of the requested

19  documents and recordings, shows a pattern and practice of non-compliance with RESPA."

20  (*Id.* at ¶¶ 27, 49.) Plaintiff also alleges Defendant refused to provide "requested audio

21  recordings or transcripts of telephone calls between [other similarly situated borrowers]

22  and BANA" and that Defendant's failure to provide the requested information is sufficient

23  to demonstrate a "pattern or practice" under RESPA. (*Id.* at ¶ 78.) In its motion, Defendant

24  argues Plaintiff's claim is deficient because it did not violate RESPA by requiring written

25  authorization or refusing to accept Plaintiff's electronic signature. (Doc. No. 12-1 at 12.)

26  Further, Defendant argues that even if Plaintiff had submitted a live signature, none of

27  Plaintiff's letters constituted a valid QWR under RESPA because Plaintiff failed to send

28  his QWRs to the address specified by BANA and, therefore, Defendant's RESPA duties

1   were never triggered in the first place. (*Id.* at 15.) Finally, Defendant claims Plaintiff failed

2   to adequately allege actual or statutory damages as required under RESPA. (*Id.* at 16.)

3          **A.     Defendant's Duty to Respond to Plaintiff's QWR or RFI**

4          Congress enacted RESPA in part to "insure that consumers throughout the Nation

5   are provided with greater and more timely information on the nature and costs of the

6   settlement process and are protected from unnecessarily high settlement charges by certain

7   abusive practices." 12 U.S.C. § 2601(a). RESPA creates a private right of action for three

8   types of wrongful acts: "(1) payment of a kickback and unearned fees for real estate

9   settlement services, 12 U.S.C. § 2607(a), (b); (2) requiring a buyer to use a title insurer

10  selected by the seller, 12 U.S.C. § 2608(b); and (3) the failure by a loan servicer to give

11  proper notice of a transfer of servicing rights or to respond to a qualified written request

12  for information about a loan, 12 U.S.C. § 2605(f)." *Choudhuri v. Wells Fargo Bank, N.A.*,

13  No. C 11-00518 SBA, 2011 WL 5079480, at *8 (N.D. Cal. Oct. 25, 2011) (citing *Patague*

14  *v. Wells Fargo Bank, N.A.*, No. C 10-03460 SBA, 2010 WL 4695480, at *3 (N.D. Cal.

15  Nov. 8, 2010)).

16         Any claim arising from BANA's alleged failure to respond to a QWR would be of

17  the third variety. Accordingly, whether Plaintiff's complaint states a claim turns on the

18  Court's ability to assess whether the July 20th, October 19th, or November 23rd

19  communications qualify as valid QWRs. Section 2605 defines a QWR as

20         a written correspondence, other than notice on a payment coupon or other
           payment medium supplied by the servicer, that—
21         (i) includes, or otherwise enables the servicer to identify, the name and
           account of the borrower; and
22         (ii) includes a statement of the reasons for the belief of the borrower, to the
23         extent applicable, that the account is in error or provides sufficient detail to
           the servicer regarding other information sought by the borrower.
24

25  12 U.S.C. § 2605(e)(1)(B).

26         The Ninth Circuit has held that "[a]ny reasonably stated written request for account

27  information can be a qualified written request." *Medrano v. Flagstar Bank, FSB*, 704 F.3d

28  661, 666 (9th Cir. 2012) (quoting *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 687 (7th

1   Cir. 2011)). Though a borrower should provide reasons for their belief that the account is
2   in error, "any request for information made with sufficient detail is enough under RESPA
3   to be a qualified written request and thus trigger the servicer's obligation to respond." *Id.*

4   Section 2605(e) requires loan servicers to respond to borrowers' qualified written
5   requests no later than thirty days after receiving the QWR. 12 U.S.C. § 2605(e)(2).
6   However, not all borrower inquiries require responses. The Ninth Circuit has held that a
7   qualified written request triggering the Section 2605(e) duty to respond must
8   "(1) reasonably identif[y] the borrower's name and account, (2) either state[] the
9   borrower's 'reasons for the belief . . . that the account is in error' or 'provide[] sufficient
10  detail to the servicer regarding other information sought by the borrower,' and (3) seek[]
11  'information relating to the servicing of [the] loan.'" *Medrano*, 704 F.3d at 666.
12  "Servicing" of the loan pertains to "scheduled periodic payments from a borrower pursuant
13  to the terms of any loan, including amounts for escrow accounts . . . , and making payments
14  of principal and interest and such other payments." *Id.* (quoting § 2605(i)(3)). Moreover,
15  the *Medrano* court explained that servicing "does not include the transactions and
16  circumstances surrounding a loan's origination—facts that would be relevant to a challenge
17  to the validity of an underlying debt or terms of a loan agreement." *Id.* at 666–67.
18  Furthermore, RESPA provides that a "loan servicer" must respond to a borrower's "[QWR]
19  . . . for information relating to the servicing of [his] loan." 12 U.S.C. § 2605(e)(1)(A).

20  Although the Ninth Circuit has not ruled on the issue, the Second and Tenth Circuits
21  have each held that a servicer's obligation to respond to a QWR is not triggered unless the
22  QWR is sent to the address the servicer has designated for receipt and handling of QWRs.
23  *See Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1149 (10th Cir. 2013) ("Failure to send
24  the QWR to the designated address . . . does not trigger the servicer's duties under
25  RESPA."); *Roth v. CitiMortgage Inc.*, 756 F.3d 178, 182 (2d Cir. 2014) ("[A] letter sent to
26  a different address is not a QWR, even if an employee at that address (who may not have
27  training in RESPA compliance) in fact responds to that letter."); *see also Lowey v. CMG*
28  *Mortg., Inc.* 385 F. Supp. 3d 1083, 1086 (S.D. Cal. 2019) (same).

21-cv-00110-AJB-DEB

Ignoring an exclusive QWR address carries harsh consequences. *Wease v. Ocwen Loan Serv., L.L.C.*, 915 F.3d 987, 995–96 (5th Cir. 2019). Courts have consistently concluded a loan servicer need not answer a misaddressed QWR—and that responding to such a letter does not trigger RESPA duties—if the servicer set an exclusive address. *See, e.g.*, *id.* at 996 ("[B]ecause [the borrower] neglected to send his letters to [the servicer]'s exclusive QWR address," the servicer did not have a duty to respond); *Bivens v. Bank of Am., N.A.*, 868 F.3d 915, 921 (11th Cir. 2017) (same).

Turning to the Plaintiff's letters in this case, it is clear they constitute challenges to the amount of debt owed and request information about how payments were applied. The first letter states the Plaintiff's name, his loan account number, a request for information, and a reason for the request. (FAC ¶ 23.) Plaintiff's next three letters, which include an Authorization to Furnish & Release Information to Plaintiff's counsel and a Request for Information, also constitute requests for release of information related to Plaintiff's loan account. (Doc. No. 12-2 at 12, 13, 20.) Although some of the categories of Plaintiff's requests to Defendant relate to loan origination, rather than servicing, Plaintiff also requested specific information about how payments were applied (audit history, payoff statement), and charges to the account (itemized statement of advances and charges, assessed fees and costs). Thus, these fall squarely within the category of "information relating to loan servicing" and provided sufficient detail as to what information Plaintiff was seeking. (*Id.* at 6–8.) However, Plaintiff addressed his letters to BAC, Defendant's parent and bank holding company, rather than to the address specified by Defendant for handling QWRs. (*Id.* at 6, 12, 20.)

Accordingly, this claim fails for two reasons. First, Plaintiff did not send his QWRs and RFIs to the address specified by his loan servicer. Second, Plaintiff sent his requests to BAC (BANA's parent and bank holding company). Because BANA specified a designated address for receipt and handling of QWRs, and Plaintiff did not send his letters to the specified address, Defendant was not required by RESPA to respond to Plaintiff's QWRs. ///

**B.     The E-SIGN Act**

Plaintiff alleges Defendant further violated RESPA by failing to accept electronic signatures for his QWRs or RFIs because written authorization is not required under RESPA or Regulation X. (FAC ¶ 27.)  While the E-SIGN Act mandates that no signature be denied legal effect simply because it is in electronic form, the Act does not require any person to agree to use or accept electronic records or electronic signatures. 15 U.S.C. §§ 7001(a)(1), (b)(2). The E-SIGN Act defines "electronic signature" as an electronic sound, symbol, or process attached to or logically associated with a contract or other record and executed or adopted by a person with the intent to sign the record. *Id.* § 7006(5). The Act provides it does not "limit, alter, or otherwise affect any requirement imposed by a statute, regulation, or rule of law . . .  other than a requirement that contracts or other records be written, signed, or in nonelectric form . . . ." *Id.* § 7001(b).

Defendant cites to 15 U.S.C. § 6801–02 to argue that "mortgage servicers maintain their customer's sensitive financial information and have statutory obligations to keep that information confidential under state and federal law, including the Gramm–Leach–Bliley Act." (Doc. No. 12-1 at 13.) Defendant states "valid written authorizations to release that information are of course an important component in safeguarding that information." (*Id.*) However, 15 U.S.C. § 6801 "does not apply to the disclosure of nonpublic personal information 'to comply with Federal, State, or local laws . . . ,' such as RESPA." *Mashiri v. Ocwen Loan Serv., LLC*, No. 3:12-cv-02838-L-MDD, 2013 U.S. Dist. LEXIS 154534, at *1, *19 (S.D. Cal. Oct. 28, 2013) (internal citation omitted). Thus, the Court finds Defendant's argument unavailing. However, because Plaintiff failed to send his letters to Defendant's specified designated address, as discussed above, Plaintiff's claim necessarily fails.

**C.     Damages**

Defendant next argues Plaintiff "does not adequately allege that he suffered damages as a result of Defendant's refusal to provide the requested information, as required under RESPA." (Doc. No. 12-1 at 16.) In his FAC, Plaintiff requests "actual damages that

1   include, but are not limited to, postage expenses and attorney's fees" to satisfy the damages

2   allegation for his RESPA claim. (FAC ¶ 8.)

3       Damages are a necessary element of a RESPA claim. *See Esoimeme v. Wells Fargo*

4   *Bank*, No. CIV S-10-2259 JAM EFB PS, 2011 WL 3875881, at \*14 (E.D. Cal. Sept. 1,

5   2011) (dismissing claim where the plaintiff failed to "allege any pecuniary loss from

6   defendant's alleged failure to respond to the QWR"); *Soriano v. Countrywide Home Loans,*

7   *Inc.*, No. 09-CV-02415-LHK, 2011 WL 1362077, at \*6 (N.D. Cal. Apr. 11, 2011)

8   (reasoning that "even if a RESPA violation exists, Plaintiff must show that the losses

9   alleged are causally related to the RESPA violation itself to state a valid claim under

10   RESPA"). While courts interpret this requirement liberally, "a number of courts have read

11   the statute as requiring a showing of pecuniary damages in order to state a claim." *Allen v.*

12   *United Fin. Mortg. Corp.*, 660 F. Supp. 2d 1089, 1097 (N.D. Cal. 2009) (citing cases). A

13   plaintiff's failure to allege a pecuniary loss attributable to a servicer's failure to respond to

14   QWRs has therefore been found to be fatal to the claim. *See Ghuman v. Wells Fargo Bank,*

15   *N.A.*, 989 F. Supp. 2d 994, 1007 (E.D. Cal. 2013).

16       First, Plaintiff contends he suffered actual damages because Defendant's alleged

17   failure to respond to the QWRs has forced him to incur postage expenses and attorneys'

18   fees in his pursuit of a response to the alleged QWRs. (FAC ¶¶ 49, 54.) However, this

19   argument fails as a matter of law. Courts have not typically considered attorneys' fees to

20   be "actual damages" in this context. *See Lal v. Am. Home Serv., Inc.*, 680 F. Supp. 2d 1218,

21   1223 (E.D. Cal. 2010) (finding the costs of filing suit were not actual damages for purposes

22   of RESPA because "the loss alleged must be related to the RESPA violation itself"); *Luciw*

23   *v. Bank of Am., N.A.*, No. 5:10-CV-02779-JF/HRL, 2010 WL 3958715, at \*3 (N.D. Cal.

24   Oct. 7, 2010) (citing cases). Furthermore, Plaintiff's claim that he incurred postage

25   expenses as a result of Defendant's failure to respond to his QWRs is insufficient to

26   establish actual damages under RESPA. *See Givant v. Vitek Real Estate Ind. Group, Inc.*,

27   No. 2:11-cv-03158-MCE-JFM, 2012 WL 5838934, at \*4–5 (E.D. Cal. Nov. 15, 2012)

28   (finding conclusory allegations that the defendant's failure to respond to a QWR resulted

in postage expenses is insufficient to establish actual damages under RESPA); *Soriano*, 2011 WL 2175603, at *4 ("Plaintiff cannot claim the costs associated with the follow-up letters as actual damages resulting from the alleged RESPA violation.") Consistent with this understanding, RESPA separately includes attorneys' fees as a recoverable cost. *See* 12 U.S.C. § 2605(f)(3). As such, in the RESPA context, a request for postage expenses and attorneys' fees for the lawsuit raising the RESPA claim does not suffice to state damages.

Next, Plaintiff alleges Defendant engaged in a "pattern or practice of noncompliance" with RESPA. Plaintiffs may also recover statutory damages under RESPA if they plead some pattern or practice of noncompliance with the statute. *Id.* § 2605(f)(1)(B). Specifically, RESPA requires the servicer of a federally related mortgage loan to provide a timely written response to inquiries from borrowers regarding the servicing of their loans. *Id.* § 2605(e)(1)(A), (e)(2); *Medrano*, 704 F.3d at 665. If the servicer fails to respond properly to such a request, the statute provides the borrower shall be entitled to "any actual damages to the borrower as a result of the failure; and any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000." 12 U.S.C. § 2605(f). In the case of a class action, the servicer shall be liable to the borrower for any "actual damages to [each of the borrowers in the class] as a result of the failure; and any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of" the statute. *Id.*

Defendant argues Plaintiff fails to plead "a pattern or practice of noncompliance with the requirements of [12 U.S.C. § 2605(f)] . . . for himself or other members of the purported class." (Doc. No. 12-1 at 18.) Defendant argues Plaintiff "provides no facts to support that any putative class member even sent in a legitimate QWR, let alone that any were denied, or denied on the same basis as Plaintiff's requests." (*Id.* at 19.) Rather, Plaintiff "claims that any customer who sent a QWR (valid or invalid) and had it denied for any reason (valid or invalid) is entitled to damages." (*Id.*) The Court finds Defendant's argument persuasive. The FAC states Defendant has engaged in a pattern or practice of

1    violating RESPA but provides no factual support for this claim. Plaintiff states he "is

2    informed and believes that other similarly situated borrowers have requested audio

3    recordings or transcripts of telephone calls between themselves and BANA only to be

4    likewise denied access to that information by BANA." (FAC ¶ 78.) This is insufficient to

5    plead damages. *See Lal*, 680 F. Supp. 2d at 1223 (dismissing conclusory pattern or practice

6    claim because it was "a legal conclusion couched as a factual allegation"). A plaintiff

7    cannot rely simply on stock legal conclusions, but must allege facts that are sufficient to

8    "raise a right to relief above the speculative level." *See id.*; *Twombly*, 550 U.S. at 555.

9         Finding no facts in the FAC supporting that Plaintiff incurred damages flowing from

10   Defendant's alleged failure to respond to Plaintiff's QWRs, the Court **GRANTS**

11   Defendant's motion to dismiss with leave to amend.

12   **V.    CONCLUSION**

13        In sum, because the Court finds Plaintiff's claims deficient in several aspects, as

14   mentioned above, the Court **GRANTS** Defendant's motion to dismiss Plaintiff's FAC for

15   failure to state a claim, pursuant to Federal Rule of Civil Procedure 12(b)(6), with leave to

16   amend. Should Plaintiff choose to do so, where leave is granted, he must file an amended

17   complaint curing the deficiencies noted herein by **April 4, 2022**.

18

19        **IT IS SO ORDERED**.

20

21   Dated:  March 21, 2022

22                                              Hon. Anthony J. Battaglia
                                                United States District Judge
23

24

25

26

27

28